IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Wesley James Coontz, | ) | CV-07-499-PCT-FJM (LOA) |
| Petitioner, | ) ) | **REPORT AND RECOMMENDATION** |
| vs. | ) ) | |
| Dora B. Schriro, et al., | ) ) | |
| Respondents. | ) ) | |
| _____ | ) ) | |

On March 5, 2007, Petitioner, proceeding *pro se*, filed a Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254.  (docket # 1) The Court dismissed the Petition with leave to file an amended petition naming the proper respondent.  (dockets ## 2-3) Petitioner filed a First Amended Petition naming the proper Respondents, which the Court dismissed based on other deficiencies with leave to amend.  (dockets ## 7-8) Thereafter, Petitioner filed a Second Amended Petition.  (docket # 9)  The Court dismissed Count I for failure to state a cognizable claim, and ordered Respondents to answer Counts II-IV.  (docket # 11)

On January 22, 2008, Respondents filed an Answer (docket # 18) asserting that the Petition should be dismissed as untimely.  (docket # 18) Respondents alternatively assert that several of Petitioner's claims are procedurally defaulted.  Petitioner replied on February 4, 2008 disputing Respondents' assertions.  (docket # 19)  For the reasons set forth below, the Court finds the Petition should be dismissed as untimely and, therefore, the Court does not reach the procedural bar issue.

## I. Factual and Procedural Background

On March 14, 1996, a Mojave County grand jury indicted Petitioner on one count of first-degree murder, a class 1 felony; one count of first-degree burglary, a class 2 felony; two counts of misconduct involving weapons, class 4 felonies; and one count of possession of dangerous drugs, a class 4 felony.  (Respondents' Exh. A at 1-3)

On June 18, 1996, Petitioner and the State entered into a plea agreement whereby Petitioner agreed to plead guilty to a reduced count of second-degree murder, a class 1 felony, in exchange for the State's dismissal of the other counts.  (Respondents' Exh. B at 4) The plea agreement also provided that the presumptive term of imprisonment for a conviction of second-degree murder is "16 calendar years, which the court may increase to 22 calendar years" . . . "in the court's discretion."  (Respondents' Exh. B at 4)

During the July 1, 1996 change of plea hearing, the court[1] advised Petitioner of the possible penalties for a conviction of second-degree murder, the consequences having of a felony conviction on his record, and the rights Petitioner relinquished, including the right to appeal, by entering the plea agreement.  (Respondents' Exh. C at 7) The Court found that Petitioner had read and signed the plea agreement, Petitioner's attorney had explained the agreement to him, no threats or promises (other than the promises contained in the plea agreement) were made to induce Petitioner to enter the agreement, and that Petitioner was satisfied with counsel's representation.  (Respondents' Exh. C at 7) The court further found that Petitioner "knowingly, voluntarily and intelligently waived his rights and entered a plea of guilty to the offense of Murder in the Second Degree, a Class 1 felony" and that there was an adequate factual basis for the plea.  (Respondents' Exh. C at 8)

On July 29, 1996, Petitioner filed a *pro se* Motion for Ineffective Assistance of Counsel asserting that appointed counsel, James O'Haver, was "forced to represent another whose interests conflict with those of the Defendant." (Respondents' Exh. D at 10)

---

[1]  The Honorable Robert R. Moon presided.

1     During an August 5, 1996 hearing, Petitioner was represented by attorneys James

2   O'Haver and Gerald Gavin of the Mojave County Legal Defender's Office.  (Respondents'

3   Exh. E at 12) The trial court found that Petitioner no longer wanted "to pursue [his] motion

4   for ineffectiveness of counsel," and that all "parties wish[ed] to proceed with sentencing."

5   (Respondents' Exh. E at 12) In accordance with the terms of the plea agreement, the court

6   dismissed counts II through V and sentenced Petitioner to an aggravated sentence of twenty-

7   two years of imprisonment.  (Respondents' Exhs. E at 13, F at 15) The court also imposed a

8   consecutive term of community supervision equal to "one day for every seven days of the

9   sentence imposed."  (Respondents' Exh. F at 15)

10      **A.  Direct Appeal**

11     On August 23, 2996, Petitioner filed a timely notice of appeal.  (Respondents'

12   Exh. G at 18) On September 9, 1996, the Arizona Court of Appeals dismissed the appeal for

13   lack of jurisdiction because Petitioner had waived his right to direct appeal by pleading

14   guilty. (Respondents' Exh. H at 20) Petitioner did not seek review of the dismissal of his

15   appeal.  (docket # 9 at 3)

16      **B.  Rule 32 Of-Right Proceedings**

17     Petitioner's guilty plea waived his right to a direct appeal under Arizona law.

18   Therefore, his only avenue of direct review was an "of-right" petition for post-conviction

19   relief under Arizona Rule of Criminal Procedure 32.  Ariz.R.Crim.P. 32.1, 32.4.  Pursuant to

20   Ariz.Crim.P. 32, Petitioner's notice of post-conviction relief was due within 90 days of entry

21   of judgment and sentence.

22     On September 27, 1996, Petitioner, proceeding *pro se*, filed a timely petition for

23   Rule 32 relief without first filing a notice of post-conviction relief. (Respondents' Exh. I at

24   22)  The trial court found Petitioner's petition "incomplete" because the Petition was not

25   signed and did not include an affidavit, other evidence, statement of facts, or legal

26   memorandum.  (Respondents' Exhs. I at 22, J at 23) On September 30, 1996, the court

27   returned the incomplete petition to Petitioner and ordered him to file a complete petition

28   within 30 days.  (Respondents' Exh. I at 22)

In accordance with the court's order, on October 28, 1996, Petitioner filed a timely petition for post-conviction relief.  (Respondents' Exh. J) Petitioner claimed that he was denied the right to competent counsel at every critical stage of the proceeding, that his guilty plea was unlawfully induced, and that counsel failed to file a timely notice of appeal.  (Respondents' Exh. J at 24) In support of these claims, Petitioner alleged that (1) trial counsel agreed to assist Petitioner with post-conviction proceedings if he pled guilty; (2) trial counsel assured him that he would receive the minimum sentence if he pled guilty; (3) trial counsel failed to comply with Petitioners' request "to file all appeals;" and (4) community supervision does not apply to a sentence of "22 years flat."  (Respondents' Exh. J at 26)

On October 28, 1996, the Court issued an order finding that Petitioner had submitted a "completed Petition for Post-Conviction Relief."  (Respondents' Exh. K) The Mojave County Defender's Office had previously filed a motion to withdraw as counsel. The court granted the motion to withdraw and appointed John Williams to represent Petitioner.  (Respondents' Exh. L)  The court ordered counsel to filed "a petition raising claims under Rule 32.1" on or before December 27, 1996.  (Respondents' Exh. K) The court subsequently extended that deadline.  (Respondents' Exh. M)

On January 21, 1997, counsel filed a notice of completion of review and request for extension of time to allow Petitioner to file a *pro per* petition.  (Respondents' Exh. M) Counsel advised the court that after review of Petitioner's notice of post-conviction relief, the Superior Court file, reporters transcripts from Petitioner's change of plea and sentencing hearings, and correspondence from Petitioner, he was unable to find any claims to raise in post-conviction proceedings.  (Respondents' Exh. M)  Counsel requested an extension of time for Petitioner to file a *pro per* petition which the Court granted.  (Respondents' Exhs. M, N)  The trial court ordered Petitioner to file a petition setting forth his claims for Rule 32 relief on or before February 21, 1997.  (Respondents' Exh. N) On Petitioner's motions, the court subsequently extended the deadline to March 25,1997, and then to April 24, 1997. (Respondents' Exh. O at 34-35)

On April 29, 1997, the trial court dismissed Petitioner's Rule 32 of-right proceedings explaining that "[t]he deadline for filing a petition for post-conviction relief stating a claim under Rule 32.1 has passed and [Petitioner] has not filed any additional pleadings," and has "failed to state a claim upon relief could be granted." (Respondents' Exh. P) Petitioner did not seek appellate review of the trial court's order of dismissal. (docket # 9 at 5) Thus, Petitioner's conviction became final 30 days later, on May 29, 1997, upon the expiration of the time for seeking appellate review. See Ariz.R.Crim.P. 32.9(c); *Summers v. Schriro*, 481 F.3d 710, 711 (9th Cir. 2007); *Hemmerle v. Schriro*, 495 F.3d 1069, 1074 n. 4 (9th Cir. 2007).

**C. Post-Conviction Review**

Approximately six years later, on or about August 7, 2003,[2] Petitioner, proceeding *pro se*, filed a notice of post-conviction relief pursuant to Ariz.R.Crim.P. 32 alleging that he received ineffective assistance of counsel which resulted in an illegal sentence. (Respondents' Exh. Q at 39) Petitioner challenged his sentence on two grounds: (1) his total sentence exceeded the statutory maximum because he was sentenced to 3 ½ years community supervision following release; and (2) under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the court should have imposed the presumptive, not the maximum, sentence. (Respondents' Exh. Q at 39, Exh. S at 53) Petitioner conceded that his notice of post-conviction review was untimely, but argued that his untimeliness should be excused because his claims were based on "[n]ewly discovered material facts." (Respondents' Exh. Q at 38-39)

---

[2] In accordance with the mailbox rule, Respondents calculate the filing dates of Petitioner's pleadings based on the date on which he signed those documents, and purportedly gave them to prison officials for mailing, rather than the date on which the pleadings were filed with the court. *See Houston v. Lack*, 487 U.S. 266, 270-74 (1988)(discussing the mailbox rule); (docket # 18 at 6 n. 5) Whether the mailbox rule actually applies does not affect the resolution of this matter. Thus, the Court will use these filing dates, which are more liberal than the dates on which the pleadings were actually filed.

1    On September 16, 2003, the trial court ruled that, because Petitioner had

2 "previously filed a petition under Rule 32, and was represented by counsel," the issues

3 Petitioner could raise in his Rule 32 proceeding were "limited by [the exceptions  set forth

4 in] Rule 32.1(d)-(h)."[3] (Respondents' Exh. R at 42)  The court rejected Petitioner's

5 challenge to the imposition of community supervision as not colorable because "in Arizona

6 the term of community supervision must be imposed, and the length of that term is not

7 considered part of the sentence."  (*Id.*)  The trial court found that Petitioner's claim that he

8 should have received the presumptive sentence could properly be raised "in a successive

9 petition and not subject to preclusion" only, as Petitioner alleged, if it was based on "newly

10 discovered evidence," and thus satisfied the exception set forth in Ariz.R.Crim.P. 32.1(f).

11 (*Id.*)  The trial court appointed counsel Eric Devany to represent Petitioner and set a

12 November 17, 2003 deadline for filing a petition for post-conviction relief.  (*Id.* at 42-43)

13    Although he was represented by counsel, on September 24, 2003, Petitioner filed

14 a *pro se* Rule-32 petition raising two claims of ineffective assistance of counsel.

15 (Respondents' Exh. S) Petitioner argued that the presumptive maximum sentence for

16 second-degree murder was either (1) 15 years "flat time" or (2) "15 years at 85%," and, thus,

17 his sentence was illegal.  (Respondents' Exh. S at 47–48)  Petitioner argued that he would

18 not have received an illegal sentence if his attorney at sentencing "would have been alert or

19 known the [sentencing] laws,"specifically *Apprendi*.  (Respondents' Exh. S at 48)

20 Petitioner, however, did not note that *Apprendi* was not issued until three yeas *after* his

21 conviction became final.  (Respondents' Exh. S at 48, 53) Petitioner also claimed that he

22 received ineffective assistance of counsel because the state was seeking the death penalty

23 and he was denied co-counsel.  (Respondents' Exh. S at 49) Notwithstanding the trial court's

24

25 ───────────────

26    [3] Ariz.R.Crim.P. 32.1 provides that untimely claims for post-conviction relief are limited
to claims of being held in custody beyond the expiration of sentence, newly discovered material

27 facts, requests for delayed appeal, significant change in the law retroactively applicable that
would probably overturn conviction or sentence, and actual innocence. Ariz.R.Crim.P. 32.1(d)-

28 (h).

1   dismissal of his challenge to the term of community supervision, Petitioner argued that "if

2   the flat time sentence is used, there is to be <u>no</u> further supervision, as the total sentence will

3   have been served in prison." (Respondents' Exh. S at 48)(emphasis in original).

4           Thereafter, appointed counsel requested leave to file a supplemental petition,

5   which the court granted. (Respondents' Exh. T) On December 10, 2003, counsel filed a

6   notice of completion of review advising the court that after his review of the Mojave County

7   Legal Defenders' trial file; the Mojave County Superior Court's file; transcripts from

8   Petitioner's change of plea and sentencing hearings, and correspondence from Petitioner, he

9   was "unable to find any claims appropriate to post-conviction relief proceedings."

10  (Respondents' Exh. U at 63) Counsel also requested an extension of time for Petitioner to

11  file a *pro se* petition. (Respondents' Exh. U at 64)

12          On December 17, 2003, the trial court denied counsel's request to provide

13  Petitioner an extension of time to file a supplemental petition because Petitioner had already

14  filed a *pro se* petition on September 29, 2003. (Respondents' Exh. V) The court ordered the

15  State to respond to the petition filed September 29, 2003. (Respondents' Exh. V)

16          The State filed a response to which Petitioner replied. (Respondents' Exh. W, X)

17  Thereafter, on March 26, 2004, the court dismissed Petitioner's petition for post-conviction

18  relief finding that Petitioner "has not raised any colorable claims that would entitle him to

19  relief" and "has not identified any newly discovered evidence which might have changed the

20  outcome of this case." (Respondents' Exh. Y at 123-24) With respect to Petitioner's first

21  claim of ineffective assistance of counsel, the court concluded that Petitioner's "lawyers, at

22  [the] trial level and in [the Rule 32] proceedings, were not ineffective for failure to raise an

23  *Apprendi* or *Ring* challenge to the findings of aggravating circumstances or imposition of the

24  aggravated sentence," because, "[t]here was no enhancement of the sentencing range under

25  A.R.S. § 13-604." (Respondents' Exh. Y at 124) The court rejected Petitioner's second

26  ineffective assistance claims explaining that "the State was not seeking the death penalty,"

27  and thus Petitioner was not entitled to two trial attorneys. (*Id.*) The court also determined

28  that the imposition of community supervision "is not part of the sentence for purposes of

1   determining whether the sentence exceeded the maximum permitted by law," because

2   "community supervision is mandatory, except under limited, specific circumstances, even if

3   the sentence of imprisonment is for a 'flat time' or calendar year term."  (*Id.*)

4        On April 9, 2004, Petitioner filed a motion for reconsideration of the trial court's

5   rejection of his sentencing claim.  (Respondents' Exh. Z at 126) On April 19, 2004, the trial

6   court denied Petitioner's motion.  (Respondents' Exh. AA)

7        On May 5, 2004, Petitioner filed a petition for review of the trial court's order

8   dismissing his Rule 32 petition with the Arizona Court of Appeals raising the following

9   issues: (1) Petitioner received ineffective assistance of counsel due to the denial of

10   "certified" attorneys; (2) trial counsel did not know the sentencing laws, including *Apprendi*;

11   (3) the trial court failed to follow the law; (4) counsel was ineffective in failing to request a

12   Rule 11 competency hearing; (5) counsel was ineffective in "volunteering" that counsel had

13   committed felony murder; (6) counsel was ineffective in failing to object to the trial court's

14   use of "mitigation evidence" of Petitioner's drug addiction to aggravate his sentence; (7)

15   counsel was ineffective in failing to argue that Petitioner lacked the *mens rea* to be found

16   guilty of murder; (8) the trial court erred in failing to "accept admissions by the State;" (9)

17   the trial court erred in failing to fully investigate mitigating factors before sentencing; (10)

18   the trial court erred in failing to determine the constitutionality of A.R.S. § 13-603 as applied

19   to "flat time;" and (11) Petitioner's sentence exceeds the maximum allowable without

20   determination of mitigating factors and without a jury.  (Respondents' Exh. BB at 146-57,

21   159-60).  On July 17, 2005, the Arizona Court of Appeals summarily denied review.

22   (docket # 10, Appendix A at 6)

23        On July 11, 2005, Petitioner filed a Motion for Reconsideration of the Arizona

24   Court of Appeals' order denying review of the trial court's order of dismissal citing *United

25   States v. Booker*, 543 U.S. 220 (2005).  (Respondents' Exh. CC at 170) The appellate court

26   rejected Petitioner's Motion for Reconsideration.  (docket # 10, Appendix A at 7) The Court,

27   thereafter, granted Petitioner an extension of time to seek review in the Arizona Supreme

28   Court.  (Respondents' Exh. DD)

1   On July 27, 2005, Petitioner sought review in the Arizona Supreme Court.

2   (Respondents' Exh. EE) Petitioner argued that the Supreme Court's opinions in *Apprendi*,

3   *Booker*, and *Blakely v. Washington*, 542 U.S. 296 (2004), applied retroactively to his case on

4   collateral review and, thus, his sentence should be vacated.  (Respondents' Exh. EE at 173-

5   181) On March 9, 2006, the Arizona Supreme Court denied review without comment.

6   (docket # 10, Appendix A at 9)

7   **D.  Petition for Writ of Habeas Corpus**

8   Thereafter, on March 5, 2007, Petitioner filed the pending Petition for Writ of

9   Habeas Corpus.  As previously discussed, Petitioner ultimately filed a Second Amended

10  Petition and the following claims are before the Court: (1) ineffective assistance of counsel;

11  (2) Petitioner's sentence violate the Sixth Amendment under the Supreme Court's decision

12  in *Apprendi* and its progeny; and (3) Petitioner's sentence violates the Eighth Amendment.

13  (docket # 10)  Respondents assert that the Petition is untimely by nearly nine years.

14  Petitioner contends that his untimeliness should be excused.

15  **II.  Statute of Limitations**

16  The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") of 1996

17  established a one year statute of limitations for filing a federal petition for writ of habeas

18  corpus.  28 U.S.C. § 2244(d)(1).  Because Petitioner filed his Petition after the effective date

19  of the AEDPA, it governs this action.  *Lindh v. Murphy*, 521 U.S. 320, 327 (1997).

20  **A. Commencement of Limitations Period**

21  The AEDPA's one-year limitations period runs from the latest of:

22  (A) the date on which the judgment became final by the conclusion of direct
    review or the expiration of the time for seeking such review;

23

24  (B) the date on which the impediment to filing an application created by
    State action in violation of the Constitution or the laws of the United States
    is removed, if the applicant was prevented from filing by such State action;

25

26  (C) the date on which the constitutional right asserted was initially recognized
    by the Supreme Court, if the right has been newly recognized by the Supreme
    Court and made retroactively applicable to cases on collateral review; or

27

28  (D) the date on which the factual predicate of the claim or claims presented
    could have been discovered through the exercise of due diligence.

1    28 U.S.C. § 2244(d)(1).

2        Under subsection (A), the AEDPA limitations period runs from "the date on

3    which the judgment became final by the conclusion of direct review or the expiration of the

4    time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  This period of direct review

5    includes the 90-day period during which a petitioner can file a petition for a writ of certiorari

6    from the United States Supreme Court.  *Bowen v. Roe,* 188 F.3d 1157, 1159 (9th Cir. 1999).

7        To assess the timeliness of Petitioner's Petition for Writ of Habeas Corpus, the

8    Court must first determine the date on which Petitioner's conviction became "final by

9    conclusion of direct review."  28 U.S.C. § 2244(d)(1)(A).  In making this determination, it is

10   significant that by pleading guilty, Petitioner waived his right to a direct appeal under

11   Arizona law.  A.R.S. § 13-4033(B); Ariz.R.Crim.P. 17.1(e).  Petitioner, however, retained

12   the right to seek review in an "of-right" proceeding pursuant to Ariz.R.Crim.P. 32.

13   Ariz.R.Crim.P. 32.1, 32.4.

14       The Ninth Circuit recently addressed, as a matter of first impression, the question

15   of when the conviction of a pleading defendant in Arizona becomes "final by the conclusion

16   of direct review" for purposes of 28 U.S.C. § 2244(d)(1).  *Summers v. Schriro*, 481 F.3d

17   710, 711 (9th Cir. 2007).  The Ninth Circuit held that an "'of-right proceeding,'available

18   under Arizona Rule of Criminal Procedure 32 to criminal defendants who plead guilty, is a

19   form of 'direct review' within the meaning of 28 U.S.C. § 2244(d)(1)."  *Id.* at 711.  The

20   *Summers* court explained that "[b]ecause a Rule 32 of-right proceeding is a form of direct

21   review, AEDPA's one-year statute of limitations does not begin to run until the conclusion

22   of the Rule 32 of-right proceeding and review of that proceeding, or until the expiration of

23   the time for seeking such proceeding or review."  *Id.*

24       Under *Summers*, because Petitioner pleaded guilty, his conviction became final

25   upon "the conclusion of the Rule 32 of-right proceeding and review of that proceeding, or

26   [upon] the expiration of the time for seeking such proceeding or review."  *Summers*, 418

27   F.3d at 711.  Here, Petitioner pleaded guilty and was sentenced on August 5, 1996.

28   (Respondents' Exhs. C, E, F)  Under Ariz.R.Crim.P. 32, Petitioner had ninety days from the

1   entry of judgment and sentence within which to file a notice of review under Rule 32.

2   Ariz.R.Crim.P. 32.1, 32.4(a)(stating that "[i]n a Rule 32 of-right proceeding the notice must

3   be filed within ninety days after the entry of judgment and sentence or within thirty days

4   after the issuance of the final order or mandate by the appellate court in the petitioner's first

5   petition for post-conviction relief proceeding.") Petitioner timely filed a notice of post-

6   conviction review of October 28, 1996.  (Respondents' Exhs. J, K) The court dismissed

7   Petitioner's of-right post-conviction proceedings on April 29, 1997.  (Respondents' Exh. P)

8   Because Petitioner did not seek appellate review of the order dismissing his Rule-32

9   petition, his judgment became final on the date that deadline expired, May 29, 1997.

10  *Summers*, 418 F.3d at 711; Ariz.R.Crim.P. 32.9(c).

11          Thereafter, Petitioner had 365 days from May 30, 1997,[4] or until May 29, 1998,

12  to file a petition for writ of habeas corpus in federal court.  28 U.S.C. § 2244(d)(1)(A).

13  Petitioner did not file the pending petition for writ of habeas corpus until March 1, 2007.

14  (docket # 1) Thus, the pending Petition is untimely unless 28 U.S.C. § 2244(d)(B), (C), or

15  (D) operate to delay the commencement of the statute of limitations or unless tolling applies.

16                        **B.  Delayed Start of Limitations Period**

17          Petitioner does not specifically argue that subsection (B), (C), or (D) applies and

18  nothing in the record supports an application of subsection (B) or (D).  However, because

19  Petitioner asserted a claim pursuant to *Apprendi* and its progeny before the state courts and

20  re-urges that claim in his pending Petition, the Court will consider whether subsection (C)

21  applies.  Section 2244(d)(1)(C) provides that the limitations period commences on "the date

22  on which the constitutional right asserted was initially recognized by the Supreme Court, if

23  the right has been newly recognized by the Supreme Court and made retroactively

24  applicable to cases on collateral review."  *Id.*  The Supreme Court issued *Apprendi* on June

25  26, 2000, several years after Petitioner's conviction became final.  Likewise, *Blakely*

26

27          [4] Federal Rule of Civil Procedure 6(a) provides: "[I]n computing any time period
    specified in these rules or in any local rule, court order, or statute: (1) Day of the Event
28  Excluded. Exclude the day of the act, event, or default that begins the period."

1  *v.Washington*, 542 U.S. 296 (2004) and *United States v. Booker*, 543 U.S. 220 (2005), were

2  decided several years after Petitioner's conviction became final.

3  As previously stated, Petitioner's conviction became final on May 29, 1997. The

4  Ninth Circuit has held that *Apprendi* and its progeny do not apply retroactively to cases that

5  were final on direct review before those cases were decided.  *Schriro v. Summerlin*, 542 U.S.

6  348, 358 (2004); *Schardt v. Payne*, 414 F.3d 1025, 1038 (9th Cir. 2005)(holding that "the

7  Supreme Court announced a new rule in *Blakely v. Washington* that does not apply

8  retroactively to a conviction that was final before that decision was announced" and thus

9  "the state court's sentencing decision cannot be challenged in a petition for habeas corpus.");

10  *Cook v. United States*, 386 F.3d 949, 950 (9th Cir. 2004)(noting that "the Supreme Court has

11  not made *Blakely* retroactive to cases on collateral review."); *United States v. Sanchez-*

12  *Cervantes*, 282 F.3d 664, 673 (9th Cir. 2002)(*Apprendi* does not apply retroactively to cases

13  on collateral review.); *Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1246 (9th Cir. 2005

14  )(finding that "*Summerlin* does not undermine the reasoning of Sanchez-Cervantes.")

15  Because *Apprendi* and its progeny have not been made retroactive on collateral review, §

16  2244(d)(1)(C) does not apply.   Thus, Petitioner's petition is untimely absent tolling.

17  ### C. Tolling the Limitations Period

18  #### 1. Statutory Tolling

19  The AEDPA one-year limitations period is tolled during the time that a "properly

20  filed application for State post-conviction or other collateral review with respect to the

21  pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); *Nino v. Galaza*, 183 F.3d

22  1003, 1006 (9th Cir. 1999)(stating that an application for collateral review is pending in State

23  court for "all the time during which a state prisoner is attempting, through proper use of state

24  court procedures, to exhaust state remedies with regard to particular post-conviction

25  proceedings.")  This time period includes the intervals between the disposition of an appeal

26  or post-conviction petition and the filing of an appeal or successive petition at the next state

27  appellate level.  *Nino*, 183 F.3d at 1006.  However, the ADEPA limitations period is "not

28  tolled from the time a final decision issued on a state direct appeal and the time the first state

collateral challenge is filed because there is no case pending during that interval." *Nino*, 183

F.3d at 1006.  *See also*, *Curtiss v. Mt. Pleasant Correctional Facility*, 338 F.3d 851, 854 (8th

Cir. 2003)(no tolling during the time between the completion of direct review and the

initiation of post-conviction proceedings).

Petitioner's second petition for post-conviction relief did not toll the AEDPA

limitations period.  Petitioner did not file his second petition for post-conviction review until

August 7, 2003, more than five years after the limitations period expired on May 29, 1998.

(Respondents' Exhs. Q, S)  Because the AEDPA statute of limitations had already run by the

time Petitioner filed his second petition for post-conviction relief, statutory tolling will not

save his Petition.  Once the AEDPA limitations period expires, a subsequently filed petition

for post-conviction relief cannot restart the statute of limitations.  *Jiminez v. Rice*, 276 F.3d

478, 482 (9th Cir. 2001).  Section 2244(d)(2) cannot "revive 'the limitation period (i.e. restart

the clock to zero); it can only serve to pause a clock that has not yet fully run.  Once the

limitation period is expired, collateral petitions can no longer serve to avoid a statute of

limitation.'"  *Johnson v. Galaza*, No. C 00-0450 CRB (PR), 2001 WL 125312, * 1 (N.D.Ca.,

Feb. 7, 2001)(quoting *Rashia v. Kuhlman*, 991 F.Supp. 254, 259 (S.D.N.Y. 1998)).  *See*

*also*, *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003)(holding that "section

2244(d) does not permit reinitiation of the limitations period that has ended before the state

petition was filed."); *Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir. 2001) (stating that state

post-conviction relief action, filed after the statute of limitations had expired, "did not cause

the statute to begin running anew when the state court denied the motion."); *Fisher v.*

*Gibson,* 262 F.3d 1135, 1142-43 (10th Cir. 2001) (there is no tolling for state post-conviction

review filed after the expiration of the statute of limitations); *Tinker v. Moore,* 255 F.3d

1331, 1333 (11th Cir. 2001) (state petition filed after the expiration of the statute of

limitations does not reinitiate the statute); *Scott v. Johnson,* 227 F.3d 260, 263 (5th Cir. 2000)

(state habeas application did not toll the limitation period under § 2244(d)(2) because it was

not filed until after the period of limitations had expired); *Jackson v. Dormire*, 180 F.3d 919,

920 (8th Cir. 1999) (holding that § 2244(d)(2) did not apply where petitioner, whose

1    conviction became final prior to the effective date of AEDPA, filed for post-conviction relief

2    after the limitations period expired.).

3        Because statutory tolling is unavailable, the AEDPA limitations period expired

4    on May 29, 1998.  Petitioner did not file his pending § 2254 petition until March 1, 2007,

5    nearly nine years after the AEDPA limitations period expired.  Accordingly, the pending

6    Petition should be dismissed as untimely unless equitable tolling applies.

7            **2.  Equitable Tolling**

8            *a.  Bowles v. Russell*

9        Respondents argue that in view of the Supreme Court's recent decision in *Bowles*

10   *v. Russell*, ___ U.S. ___ , 127 S.Ct. 2360 (2007), the AEDPA statute of limitations is

11   jurisdictional and not subject to equitable tolling.  In *Bowles*, Supreme Court held that the

12   timely filing of an appeal in a civil case is a jurisdictional requirement.  *Id.* at 2366.  The

13   *Bowles* Court reasoned that because federal statutes set forth time limits on filing a notice of

14   appeal and reopening the appeal period, Congress intended to preclude a court from

15   exercising jurisdiction over otherwise legitimate cases after a ceratin period of time had

16   elapsed after final judgment.  *Id.*

17       Similar to the federal statutes at issue in *Bowles*, the AEDPA establishes time

18   limits on when a petitioner may file a petition for writ of habeas corpus.  28 U.S.C.§

19   2244(d)(1).  On two occasions, the Supreme Court has denied certiorari on the issue of

20   whether these limits are jurisdictional.  *See David v. Hall*, 540 U.S. 815 (2003); *Flanders v.*

21   *Graves*, 537 U.S. 1236 (2003).  The Supreme Court has noted that it has never squarely

22   addressed whether equitable tolling applies to the AEDPA's statute of limitations.

23   *Lawrence* v. *Florida*, ___ U.S. ___, 127 S.Ct. 1079, 1085 (2007). Accordingly, whether the

24   AEDPA is subject to equitable tolling remains an open question.  However, a recent decision

25   in the District of Arizona followed the Second Circuit in holding that *Bowles* does not apply

26   to the AEDPA.  *Hernandez v. Arpaio*, CV-07-1712-PHX-DGC, 2008 WL 370900, * 2

27   (D.Ariz., Feb. 11, 2008)(citing *Diaz v. Kelly*, No. 1-2687-RR, 2008 WL 199846, * 3)(2d

28   Cir., Jan. 25, 2008).  Although the Court is inclined to follow *Hernandez* and hold that

1  *Bowles* does not apply to the AEDPA, the Court need not resolve that issue because even

2  assuming equitable tolling remains viable after *Bowles*, as Respondents alternatively argue,

3  Petitioner does not satisfy the requirements for such tolling.

4         *b. Equitable Tolling Analysis*

5         The Ninth Circuit has held that the AEDPA's limitations period may be equitably

6  tolled because it is a statute of limitations, not a jurisdictional bar.  *Calderon v. United States*

7  *Dist. Ct. (Beeler)*, 128 F.3d 1283, 1288 (9th Cir. 1997), *overruled, in part, on other grounds*

8  *by*, *Calderon v. United States Dist. Ct. (Kelly)* 163 F.3d 530, 540 (9th Cir. 1998).  The Ninth

9  Circuit has held that tolling is appropriate when "extraordinary circumstances beyond a

10  prisoner's control make it impossible to file a petition on time."  *Id*.; *see also, Stillman v.*

11  *LaMarque,* 319 F.3d 1199, 1202 (9th Cir. 2003); *Miranda v. Castro*, 292 F.3d 1063, 1067

12  (9th Cir. 2002)(stating that "the threshold necessary to trigger equitable tolling [under

13  AEDPA] is very high, lest the exceptions swallow the rule.")(citations omitted); *Spitsyn v.*

14  *Moore*, 345 F.3d 796, 799 (9th Cir. 2003). "When external forces, rather than a petitioner's

15  lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute

16  of limitations may be appropriate."  *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999).

17         The Supreme Court avoided deciding whether the AEDPA's statute of

18  limitations may be equitably tolled.  *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

19  However, because the parties had argued on the basis that it could, the Court assumed that

20  equitable tolling applies and observed that a petitioner seeking equitable tolling must show:

21  "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary

22  circumstance stood in his way."  *Pace*, 544 U.S. at 418.  In *Pace*, the Court noted that

23  although Petitioner's claims were available in 1986 and 1991, he "waited years without any

24  valid justification" to assert those claims in an untimely state petition.  *Id.*  Because

25  Petitioner sat "on his rights for years before he filed his [state] petition" and "also sat on

26  them for five more months after his [state] proceedings became final before deciding to seek

27  relief in federal court, the Court concluded that Petitioner's lack of diligence precluded

28  equitable relief.  *Id.*

Recently in *Harris v. Carter*, ___ F.3d ___, 2008 WL 341712, * 3 (9ᵗʰ Cir., Feb. 8, 2008), the Ninth Circuit noted that its "cases since *Pace* have not settled on a consistent standard" for establishing equitable tolling. *Harris*, 2008 WL 341712, * 3.  In *Harris*, Petitioner argued that *Pace* "articulated a new and less strict" standard than that Ninth Circuit's test of "impossible to file a petition on time." *Id.* at * 2.  *Harris* did not resolve that issue, but rather, found that on the facts of that case, the "arguable distinctions between the two standards" was not at issue in that case. *Id.* at * 3.

In this case, Petitioner does not argue that *Pace* established a less stringent standard for invoking equitable tolling.  Regardless of whether the *Pace* standard is less stringent than the Ninth Circuit's test of "impossible to file a petition on time," as discussed below, Petitioner does not satisfy the standard articulated in *Pace*.

Petitioner argues that his lack of legal education and lack of access to case law constitute extraordinary circumstances which stood in the way of filing a timely petition for writ of habeas corpus.  (docket # 19 at 3-4)

Petitioner's lack of familiarity with the law and lack of legal assistance do not constitute extraordinary circumstances sufficient to toll the limitations period.  *Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9ᵗʰ Cir. 2006)(affirming denial of equitable tolling because neither the district court's failure to advise the petitioner of the right to amend his petition to include unexhausted claims nor petitioner's inability to correctly calculate the limitations period were extraordinary circumstances warranting equitable tolling); *Ballesteros v. Schriro*, CV-06-675-EHC (MEA), 2007 WL 666927 (D.Ariz., February 26, 2007)(noting that a petitioner's *pro se* status, ignorance of the law, lack of representation during the applicable filing period, and temporary incapacity do not constitute extraordinary circumstances)(citing *Fisher v. Johnson*, 174 F.3d 170, 714-15 (5ᵗʰ Cir. 1999); *Shoemate v. Norris*, 390 F.3d 595, 598 (8ᵗʰ Cir. 2004)(holding that petitioner's misunderstanding of state's "rules, statutes, and the time period set forth therein do not justify equitable tolling.")).  "[I]t is well established that 'ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing.'" *Marsh v. Soares*, 223 F.3d 1217,

1220 (10th Cir. 2000)(quoting *Fisher v. Johnson*, 174 F.3d 710, 714 (9th Cir. 1999). *See also*, *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986)(finding that a *pro se* prisoner's illiteracy was not sufficient to satisfy the standard of an objective, external factor amounting to "cause" for purposes of avoiding the procedural bar on his habeas claim).

Likewise, Petitioner's status as a prison inmate does not constitute an extraordinary circumstance beyond his control warranting the tolling of the one-year limitations period. *Marsh*, 223 F.3d at 1220. The ordinary difficulties inherent in prison life do not constitute extraordinary circumstances sufficient to toll the AEDPA limitations period. *Shannon v. Newland*, 410 F.3d 1083, 1090 (9th Cir. 2005)(stating that "[e]ach of the cases in which equitable tolling has been applied have involved wrongful conduct, either by state officials or occasionally, by the petitioner's counsel.").

Petitioner also argues that the lack of legal resources available to him prevented him from timely filing his habeas corpus petition. Prison law libraries are one constitutionally accepted method to assure inmates meaningful access to the courts, however, this does not preclude other methods to achieve this goal. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). In some cases inadequate legal materials can be an "impediment" which justifies untimely filing, or can form a basis for equitable tolling. *See*, *Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir. 2000)(*en banc*). However, Petitioner only states that he lacked access to case law and does not explain how that caused his untimely filing. Petitioner has not demonstrated how the alleged inadequacies of the prison legal system impeded his timely filing.

Moreover, to show "diligence," of the kind required for equitable tolling of the one-year limitations period of 28 U.S.C.A. § 2244(d)(1), any state prisoner claiming deficiencies in the prison law library must provide details of specific actions taken toward filing the petition and must show when he found out about the library's alleged deficiency, must state any independent efforts he made to determine when the relevant limitations period began to run, and must demonstrate how the prison thwarted his efforts. *Arthur v.*

1   *Allen*, 452 F.3d 1234 (11th Cir. 2006), *opinion modified on reh'g*, 459 F.3d 1310 (11th Cir.

2   2006) and petition for cert. filed (U.S. Jan. 11, 2007).  Petitioner has not made any of these

3   showings.

4           Even if Petitioner demonstrated extraordinary circumstances, equitable tolling is

5   not available because he has not met his burden of showing that he has been pursuing his

6   rights diligently. *Pace*, 544 U.S. at 418; *Espinoza-Matthews v. California*, 432 F.3d 1021,

7   1026 (9th Cir. 2005)(stating that petitioner bears the burden of demonstrating grounds for

8   equitable tolling); *Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 1992).  It is only when

9   external forces, rather than a petitioner's lack of diligence, account for the failure to file a

10   timely habeas petition that equitable tolling may be appropriate.  *Miles v. Prunty*, 187 F.3d

11   1104, 1107 (9th Cir. 1999).  Equitable tolling is not permissible if the claimant has failed to

12   exercise due diligence in preserving his legal rights, *Pace*, 544 U.S. at 418.

13           In *Pace*, the Supreme Court noted that although Petitioner's claims were

14   available in 1986 and 1991, he "waited years without any valid justification" to assert those

15   claims in an untimely state petition. *Pace*, 544 U.S. at 418.  Because Petitioner sat "on his

16   rights for years before he filed his [state] petitioner" and "also sat on them for five more

17   months after his [state] proceedings became final before deciding to seek relief in federal

18   court, the Court concluded that Petitioner's lack of diligence precluded equitable relief.  *Id.*

19           Similar to *Pace*, Petitioner is not entitled to equitable tolling on any basis

20   because he failed to exercise diligence in pursuing his claims. *Pace*, 544 U.S. at 418. *See*

21   *also*, *Johnson v. United States*, 544 U.S. 295, 311 (2005)(finding that petitioner did not

22   diligently pursue his claims where he did not commence state post-conviction proceedings

23   until three years after judgment was entered and 21 months after the AEDPA's effective

24   date); *Guillory v. Roe*, 329 F.3d 1015, 1018 (9th Cir. 2003)(finding that petitioner was not

25   entitled to equitable tolling due to his lack of diligence); *Johnson v. McCaughtry*, 265 F.3d

26   559, 565-66 (7th Cir. 2001)(holding that petitioner did not exercise diligence because he had

27   no motions or cases pending in state or federal court during three intervals totaling 364

28   days); *Delaney v. Matesanz*, 264 F.3d 7, 14 (1st Cir. 2001)(finding no equitable tolling

1   where petitioner waited over two years after his conviction became final (and ten months

2   after the AEDPA's effective date) to file his first habeas petition).

3           Petitioner's first Rule 32 proceedings were dismissed based on Petitioner's

4   failure to file a petition despite have been granted several extensions of time in which to do

5   so.  (Respondents' Exhs. N-P)   The trial court dismissed Petitioner's first Rule 32

6   proceedings on April 29, 1997 and Petitioner did not seek appellate review.

7           Petitioner's case lay dormant for approximately six years between the conclusion

8   of his first post-conviction of-right proceedings and when he filed his second notice of

9   post-conviction relief on August 7, 2003.  Petitioner's failure to file his first Rule 32 of -

10  right petition despite several extensions of the filing deadline,  Petitioner's failure to seek

11  appellate review of his first post-conviction proceedings, and the extended period of

12  inactivity between Petitioner's first and second petitions for post-conviction relief illustrate

13  Petitioner's lack of diligence.

14          Petitioner fails to demonstrate that he diligently pursued his rights and that an

15  "extraordinary circumstance" prevented him from filing a timely petition.  *Pace,* 544 U.S. at

16  418.  Accordingly, there is no basis for equitably tolling the AEDPA statute of limitations

17  and the Petition should be dismissed as untimely.

18  **III.  Evidentiary Hearing**

19          Petitioner has not shown that an evidentiary hearing is warranted.  "A habeas

20  petitioner . . . should receive an evidentiary hearing when he makes a 'good-faith allegation

21  that would, if true, entitle him to equitable tolling.;" *Roy* v. *Lampert*, 465 F.3d 964, 969 (9th

22  Cir. 2006)(quoting *Laws v. Lamarque*, 351 F.3d 919 (9th Cir. 2003)).  Equitable tolling for a

23  federal habeas petition requires petitioner to show that he has been diligently pursuing his

24  rights and that some extraordinary circumstance stood in his way.  *Pace*, 544 U.S. at 418.

25  As discussed above, Petitioner's allegations do not entitle him to equitable tolling and,

26  therefore, there is no basis for an evidentiary hearing.

27  **IV.  Summary**

28

Because Petitioner's habeas petition is untimely under the ADEPA and equitable tolling is not justified, the Court does not address the merits of Petitioner's claims, or Respondents' contention that his claims are procedurally defaulted.

Accordingly,

IT IS HEREBY RECOMMENDED that Petitioner's Second Amended Petition for Writ of Habeas Corpus (docket # 9) be **DENIED.**

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.  The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See,* 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(e), Federal Rules of Civil Procedure.  Thereafter, the parties have ten days within which to file a response to the objections.  Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).  Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See*, Rule 72, Federal Rules of Civil Procedure.

DATED this 7th day of March, 2008.

Lawrence O. Anderson
United States Magistrate Judge

- 20 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28